**KINGSLEY & KINGSLEY, APC**
**GEORGE R. KINGSLEY, ESQ.** SBN-38022
*gkingsley@kingsleykingsley.com*
**ERIC B. KINGSLEY, ESQ.** SBN-185123
*eric@kingsleykingsley.com*
**KEVIN M. ZIETZ, ESQ.** SBN-186244
*kzietz@kingsleykingsley.com*
**16133 VENTURA BL., SUITE 1200**
**ENCINO, CA 91436**
**(818) 990-8300, FAX (818) 990-2903**

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

FELICE MARTINEZ, on behalf of herself and   others similarly situated,

           Plaintiffs,

    v.

LENSCRAFTERS, INC.; DOES 1 through 50, Inclusive,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.: C08-01699 PJH**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL

DATE:    October 14, 2009
TIME:    9:00 a.m.
DEPT.:   5
JUDGE:  Hon. Phyllis J. Hamilton

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on October 14, 2009, at 9:00 a.m. in Dept. 5 of the United States District Court Northern District of California, (San Francisco Division), plaintiff will move this court for an order of preliminary approval of the class settlement.

DATED: September _3_ , 2009    KINGSLEY & KINGSLEY, APC

                             By:

                                ERIC B. KINGSLEY
                                Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

      A.    Class Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

      B.    Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

      C.    The Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

III.  THE SETTLEMENT AGREEMENT . . . . . . . . . . . . . . . . . . . . . . .   5

      A.    Settlement Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

      B.    Claims Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      C.    Claims Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      D.    Release and Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

      A.    The Role of the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

      B.    Certification of Plaintiff's Claims on a Classwide Basis Is
            Appropriate under Rule 23 . . . . . . . . . . . . . . . . . . . . . . . .  10

            1.    Plaintiff Has Met All Of The Prerequisites Under
                  Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

                  a.    The Class is Ascertainable . . . . . . . . . . . . . . . . . .  11

                  b.    The Class is Numerous . . . . . . . . . . . . . . . . . . . .  12

                  c.    The Settlement Class Satisfies the Commonality
                        Element . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

                  d.    Plaintiff's Claims are Typical of the Class Members'
                        Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

                  e.    Plaintiff and Her Counsel Satisfy the Adequacy
                        Element . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

      C.    The Proposed Settlement Class Should Be Certified Because
            It Also Meets The Requirements of Rule 23(b)(3). . . . . . . . . . . . . .  15

V.    THE PROPOSED SETTLEMENT SHOULD BE GRANTED
      PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

      A.    The Terms of the Proposed Settlement Are Procedurally
            Fair Because the Case Was Settled as a Result of
            Non-collusive Negotiations . . . . . . . . . . . . . . . . . . . . . . .  17

1.  The Settlement Is the Product of Serious, Arms-length, Informed Efforts by Both Parties . . . . . . . . . . . . . . . . . . . . . . . 17

2.  The Payment to the Named Representative for Her Service to the Class Is Reasonable and Routinely Awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.  The Proposed Plan of Distribution Is Fair and Reasonable Because it Accounts for Settlement Class Members' Lengths of Service . . . . . . . . . . . . . . . . . . . . 18

B.  The Settlement Is Fair and Is Within the Range of Possible Final Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.  The Amount Offered in the Settlement Supports Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2.  The Expected Reaction of the Class Supports Approval of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3.  Defendant Had Strong Defenses . . . . . . . . . . . . . . . . . . . . . 21

4.  The Risk, Expense, Complexity and Likely Duration of This Litigation Supports the Settlement . . . . . . . . . . . . . . . . . . 21

    a.  The Risks Inherent in Continued Litigation are Great . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    b.  The Complexity, Expense and Likely Duration of the Litigation Weigh in Favor of Settlement . . . . . . . . 22

5.  The Stage of the Proceedings and Scope of Discovery Support the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6.  The Experience and Views of Counsel Support Settlement Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    a.  The Absence of Fraud or Collusion Supports the Approval of the Settlement . . . . . . . . . . . . . . . . . . 24

    b.  Risk of Maintaining the Action Through Trial . . . . . . . . 24

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE(S)**

## FEDERAL

Amchem Prods., Inc. v. Windsor 521 U.S. 591, 618-20 (1997) . . . . . . . . . . . . . . . . . 9, 11, 16

Armstrong v. Board of School Directors of the City of Milwaukee,
616 F. 2d 305, 314 (7th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Baby Neal for and by Kanter v. Casey, 43 F. 3d 48, 56 (3d Cir. 1994) . . . . . . . . . . . . . . 12

Blackie v. Barrack, 524 F. 2d 891, 905-06 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . 15

Boyd v. Bechtel Corp., 485 F. Supp. 610, 616-17 (N.D. 23 Cal. 1979) . . . . . . . . . . . . . . 22

Guarantee Ins. Agency Co. v. Mid-Continental Rty. Co.
57 R.R.D. 555, 565-66 (N.D. Illinois 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gutierrez v. Kovacevich "5" Farms,
2004 WL 3745224, at *5 (E.D. Cal. Dec. 2, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Haley v. Medtronic, Inc., 169 F.R.D. 643, 648 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . 13

Hanlon v. Chrysler Corp., 150 F. 3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . 8, 12, 13, 15

Harris v. Palm Springs Alpine Estates, Inc.
329 F.2d 909, 913-914 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Automotive Refinishing Paint Antitrust Litig.,
MDL No. 1426, 2003 U.S. Dist. LEXIS 4681, at *3 . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,
MDL Docket No. 901, Ib992 U.S. Dist. LEXIS 14337, at *8
(C.D. Cal. June 10, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re General Motors Corp., 55 F.3d 768, 806 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . 22

In re Initial Pub. Offering Sec. Litig., 226 F.R.D. 186, 191 (S.D.N.Y. 2005) . . . . . . . . . 8, 19

In re Michael Milken & Assoc. Sec. Litig., 150 F.R.D. 46, 53 (S.D.N.Y. 1993) . . . . . . . . . 8

In re NASDAQ Market-Makers Antitrust Litig.,
176 F.R.D. 99, 102 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

In re Prudential, 163 F.R.D. at 209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

In re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997) . . . . . . . . . . . 17

In re Traffic Executive Association-E Railroads,
627 F.2d 631, 633-34 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

In re Visa Check/Mastermoney Antitrust Litig., 280 F. 3d 124, 132-33 (2d Cir. 2001) . . . . 11

In re Vitamins Antitrust Litig., WL 856292, at *4-5 (D.D.C. July 25, 2001) . . . . . . . . 16, 17

In re Warner Comms. Sec. Litig., 798 F. 2d. 35, 37 (2d Cir. 1986) . . . . . . . . . . . . . . . 8

Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) . . . . . . . . . . . . . . . 17

Malchman v. Davis, 761 F 2d 893, 905 n.5 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 9

Mashburn v. National Healthcare, Inc., 684 F. Supp. 679, 692 (M.D.Ala.1988) . . . . . . . . . 9

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d 1995) . . . . . . . . . . . 19

McNamara v. Bre-X Minerals Ltd., 214 F.R.D. 424, 430-31 (E.D. Tex. 2002) . . . . . . . . . . 24

Mego Financial Corp. Sec. Litigation, 213 F.3d, 454, 458 (9th Cir. 2000) . . . . . . . . . . . . . 20

Morelock Enterprises, Inc. v. Weyerhaeuser Co.,
2004 WL 2997526, *5 (D. Or. Dec. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Nat 'l Rural Teleoms Coop., 221 F.R.D. at 528 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Officers For Justice, 688 F3d. at 625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

Paul, Johnson, Alston & Hunt v. Graulty, 886 F2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . 9

Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.,
323 F. Supp. 364, 378 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

Saylor v. Lindsley, 456 F.2d 896, 904 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Slaven v. BP Am., Inc., 190 F.R.D. 649, 655 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . 12, 13

Staton v. Boeing Co., 327 F. 3d 938, 957 (9th Cir. Wash. 2003) . . . . . . . . . . . . . . . . . . . . 13

Tierno v. Rite-Aid Corp., No. 05-2520, 2006 WL 2535056
(N.D. Cal., Aug. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Torri v. Tuscon Elec Power Co., 8 F3d 1370, 1377 (9th Cir 1993) . . . . . . . . . . . . . . . . . . 8

Van Bronkhorst v. Safeco Corp., 529 F. 2d 943, 950 (9th Cir. 1976) . . . . . . . . . . . . . . . 16, 23

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F. 3d 96, 117 (2d. Cir. 2005) . . . . . . . . . . . 19

White v. National Football League, 41 F.3d 402, 408 (8th Cir. 1994) . . . . . . . . . . . . . . . . . 10

Young v. Katz, 447 F.2d 431,433-34 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Young v. Polo Retail, LLC, 2006 U.S. Dist LEXIS 81077,
*13 (N.D. Cal. Oct. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATE**

Daar v. Yellow Cab Company, 67 Cal.2d 695 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hypolite v. Carlson, 52 Cal.App.3d 566, 579 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

McGhee v. Bank of America, 60 Cal.App.3d 442, 451 (1976) . . . . . . . . . . . . . . . . . . . . . . . 14

Rose v. City of Hayward, 126 Cal.App.3d 926, 933 (1981) . . . . . . . . . . . . . . . . . . . . . . . 11


**FEDERAL STATUTES**

Federal Rule of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11,16
Federal Rule of Civil Procedure 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15
Federal Rule of Civil Procedure 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Federal Rule of Civil Procedure 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
Federal Rule of Civil Procedure 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Federal Rule of Civil Procedure 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 16
Federal Rule of Civil Procedure 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Federal Rule of Civil Procedure 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Federal Rule of Civil Procedure 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8
Federal Rule of Civil Procedure 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Federal Rule of Civil Procedure 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**STATE STATUTES**

Business & Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §1174 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §1175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §1199 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Labor Code §2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**TREATISES/SECONDARY AUTHORITY**

Newberg on Class Actions 4th §11.25 (2002) . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 19, 23
Manual for Complex Litigation, Fourth §21.632 (2004) . . . . . . . . . . . . . . . . . 8, 9, 11, 17
Moore's Federal Digest ¶23-279 (2d ed. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Settlement and Dismissal of Stockholders' Actions, The - Part II: The Settlement,
23 sw L.J. 765, 795 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff FELICE MARTINEZ ("Plaintiff" or "Named Plaintiff"), individually and on behalf of the class she represents, claims that she is owed unpaid wages and penalties from defendant LENSCRAFTERS, INC ("Defendant").

On March 9, 2009, Defendant filed a motion for summary judgment against Plaintiff on the grounds that Plaintiff signed a release that was a complete bar to her recovery in this case.  Specifically, in early 2008, a few months after Plaintiff ceased employment with Lenscrafters, and after this lawsuit against Defendant, Plaintiff received Notice of Class Settlement in Babasa v. Lenscrafters, Orange County Superior Court Case No. 05 CC00079 (the "Babasa case"), a class action filed against Defendant. The Babasa case concerned meal and rest break claims asserted by employees who were classified as, or were treated as, non-exempt employees[1].  See *Declaration of Nancy Pritikin*, ¶6. Plaintiff, and 164 other putative class members in this case, were part of the class covered by the Babasa settlement, which contained releases of LensCrafters from any and all claims arising under the California Labor Code, the California Business and Professions Code, and any claims that were or could have been asserted in the lawsuit with respect to wage and hour violations. See *Declaration of Nancy Pritikin*, ¶8.

Also on March 9, 2009, the parties participated in a full-day mediation which resulted in arms length negotiations between the parties held before an experienced mediator, Mark Rudy.  After the mediation,  the Parties continued discussions with the Mediator and each other.  After extensive discovery and investigation of the facts and after carefully considering the applicable law, the Parties reached a settlement on June 16, 2009, on the terms set forth herein.

Through the instant motion, the Parties seek preliminary approval of the terms and

---

[1]Plaintiff began her tenure at LensCrafters as a non-exempt sales supervisor.  She was promoted to the position of Retail manager approximately two months before she left the Company.

1   conditions contained in the Joint Stipulation of Settlement and Release (the "Settlement

2   Agreement"). Because the eventual fairness hearing will provide the Court another

3   opportunity to review the Settlement (with the benefit of class member input), preliminary

4   approval should be granted so long as the proposed settlement is within the range of

5   possible approval. See, e.g., In re Traffic Executive Association-E Railroads, 627 F.2d

6   631, 633-34 (2nd Cir. 1980); Young v. Polo Retail, LLC, 2006 U.S. Dist LEXIS 81077,

7   *13 (N.D. Cal. Oct. 25, 2006); see also Newberg on Class Actions 4th §11.25 (2002).

8        As set forth more fully herein, the Parties have satisfied the minimal showing

9   necessary for preliminary approval. The Settlement Agreement, which the Parties have

10  filed with the Court, sets forth all of the agreements between the Parties. This Settlement

11  Agreement was reached through arms length bargaining with the assistance and

12  considerable involvement of both experienced counsel and a respected mediator, and the

13  proposed settlement will result in a financial benefit to claimants.  There is nothing to

14  suggest that the fully disclosed agreement, which includes all agreements between the

15  parties including attorney's fees (also subject to Court approval), is unreasonable or

16  excessive.  The proposed form of notice to the Class is more than adequate under

17  pertinent standards.  In short, the Settlement Agreement is highly advantageous to the

18  Class Members under the circumstances and merits preliminary approval by the Court.

19       Consequently, under Rule 23(e), of the Federal Rules of Civil Procedure, Plaintiff

20  submits this memorandum of points and authorities in support of her motion for

21  preliminary approval of the settlement reached in this action between Plaintiff and

22  Defendant.

23       By this motion, the parties request that the Court:

24       (1)    Grant preliminary approval of the proposed settlement;

25       (2)    Certify the proposed plaintiff class pursuant to Rules 23(b)(2) and (b)(3) for

26              purposes of the settlement;

27       (3)    Approve the proposed class notice;

28       (4)    Schedule a hearing on final approval of the settlement and plaintiff counsel's

3

1    application for an award of fees and litigation costs ("Final Fairness

2    Hearing") at which Class Members may be heard.

3        Capitalized terms that are not defined herein have the meanings assigned to them

4    Class Action Settlement Agreement and Stipulation.

5        The Class Action Settlement Agreement and Stipulation is highly advantageous to

6    the Class Members and merits preliminary approval by the Court.

7    **II.    FACTUAL BACKGROUND**

8        **A.    Class Allegations**

9        LensCrafters is a nationwide optical chain with approximately 100 stores in

10   California. Plaintiff, a former Retail Manager for LensCrafters, filed the present class

11   action on February 14, 2008 in Alameda Superior Court against her former employer. See

12   *Declaration of Nancy Pritikin*, ¶2. The case was removed to the federal Northern District

13   of California, and was assigned to the Honorable Phyllis J. Hamilton, United States

14   District Court Judge. In her First Amended Complaint ("FAC"), filed on May 7, 2008,

15   Plaintiff alleges that because LensCrafters purportedly misclassified its Retail and

16   General Managers, it (1) failed to pay them overtime in alleged violation of Labor Code

17   §§510, 1194 and 1199, (2) failed to provide meal breaks in alleged violation of Labor

18   Code §§226.7 and 512, (3) failed to properly itemize its wage statements in alleged

19   violation of Labor Code §§226, 1174 and 1175, (4) failed to pay all wages due and owing

20   at the time of termination in alleged violation of Labor Code §203, (5) is subject to

21   penalties under the California Labor Code Private Attorneys General Act ("PAGA"),

22   California Labor Code §2698 et seq., and (6) violated the Unfair Competition Law

23   ("UCL") set forth at California Business and Professions Code §17200 et seq. (the

24   "Action"). See *Declaration of Eric B. Kingsley,* ¶4.

25       **B.    The Mediation**

26       Arm's-length settlement negotiations have taken place between the parties. The

27   case was mediated in a full-day session on March 9, 2009, before Mark Rudy, of Rudy,

28   Exelrod & Zieff, LLP, a well respected and experienced employment law and class action

mediator. After the mediation, the Parties continued discussions with the Mediator and each other. Settlement was eventually reached on June 16, 2009. See *Declaration of Eric B. Kingsley*, ¶3; See *Declaration of Nancy Pritikin*, ¶12.

### C.  The Settlement Class

The proposed Settlement calls for certification of a settlement class (referred to as "Class Members" or the "Settlement Class" which is defined as:

> All employees of Defendant LensCrafters, Inc., who were employed in California from March 1, 2006, until August 1, 2009, and who were or are classified as Retail Managers or General Managers at any time during the Class Period.[2]

## III.   THE SETTLEMENT AGREEMENT

### A.  Settlement Amount

As detailed fully in the Settlement Agreement, the settlement provides for the payment of timely claims by defendant of up to $400,000.00 ("Settlement Amount") to pay (1) the Settlement Payment; (2) Payments to the Labor and Workforce Development Agency ("LWDA"); (3) Class Counsel's Fees and Expenses; (4) the Class Representative's Payments; (5) costs of administering the Settlement; and (6) all employer-paid payroll tax costs which must be remitted on Settlement Payments, including but not limited to Federal and California unemployment insurance tax, California Employment Training Tax, FICA and Medicare contributions. See *Declaration of Eric B. Kingsley*, ¶11, *Declaration of Nancy Pritikin*, ¶14.

Of the $400,000 Settlement Amount, up to twenty-five percent (25%) of the Settlement Amount has been allocated as attorney's fees and costs[3]; and up to $1,000 has been allocated as an enhancement award to the Named Plaintiff.  Subject to Court Approval, an amount of up to $38,000 will be set aside to cover the costs of a Claims Administrator.  Subject to court approval, up to $10,000 from the Settlement will be

---

[2] The Settlement Class will not include any person who chooses to opt out.

[3] Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiff will make a separate motion for attorneys' fees and reimbursement of costs.

allotted to payment of PAGA penalties. An amount of up to $7,500 will be paid to the California Labor and Workforce Development Agency ("LWDA") for Settlement of PAGA penalties, and $2,500 will be allocated to the Settlement Class as PAGA penalties and distributed to class members on a claims-made basis. (See *Settlement Agreement* ¶42, attached as **Exhibit 1** to the *Declaration of Eric B. Kingsley,* ¶¶ 11,12).

## B.   Claims Procedure

Under the terms of the proposed Settlement, each Settlement Class member who does not opt out of the Settlement and who submits a claim form confirming their workweeks in which they were allegedly denied overtime compensation and/or meal breaks in the positions of Retail Manager and/or General Manager, will receive a share of the Net Settlement Amount. The Claims Administrator will calculate a per workweek rate of pay for Retail Managers and a separate per workweek rate of pay for General Managers. The workweek rate of pay for Retail Managers will be determined by dividing an amount equal to 60% of the NSA ("Net Settlement Amount[4]") by the total number of workweeks worked during the Class Period by all individuals who held the position of Retail Manager. The workweek rate of pay for General Managers will be determined by dividing an amount equal to 40% of the NSA by the total number of workweeks worked during the Class Period by all individuals who held the position of General Manager. A qualified Retail Manager's Settlement Payment shall be calculated as the workweek rate multiplied by the number of workweeks worked in the position of Retail Manager during the Settlement Class Period. A qualified General Manager's Settlement Payment shall be calculated as the workweek rate multiplied by the number of workweeks worked in the position of General Manager during the Settlement Class Period. (See *Settlement Agreement* ¶42, attached to the *Declaration of Eric B. Kingsley* as **Exhibit 1**).

## C.   Claims Administrator

The Settlement also provides for the appointment of Rosenthal & Co. as Claims

---

[4] The funds after payment of attorneys' fees and costs, the enhancement award, and the payment to the Claims Administrator

1  Administrator to send Class notices, to calculate amounts due to claimants, and otherwise
2  administer the settlement process under the supervision of the parties and the Court. The
3  process set forth in the Settlement provides for prompt notice to the proposed Settlement
4  Class, a claim procedure, and an opportunity to opt out of the claims subject to the
5  Settlement, as well as a dispute resolution process. (See *Settlement Agreement* ¶46, 47,
6  attached to the *Declaration of Eric B. Kingsley* as **Exhibit 1**).

7  The Class Notice provides all of the information necessary to apprise Class
8  Members of the terms of the Settlement Agreement and of their rights and options with
9  respect to it. The notice explains clearly and precisely who is a member of the settlement
10  class, how to participate in the settlement, how to object to the settlement, and how to opt
11  out of the settlement. The Class Notice also clearly explains the consequences of each of
12  these options.

13  **D.     Release and Waiver**

14  As part of the Settlement, Settlement Class members shall release and discharge
15  LensCrafters from any claims under California Labor Code, the UCL, and PAGA, that
16  were alleged or could have been alleged based upon the facts alleged in the initial
17  Complaint, and First Amended Complaint, including all claims regarding unpaid wages,
18  unpaid overtime, unpaid meal and rest periods, late payment of final wages, claims under
19  PAGA, claims for unfair competition; any claims for restitution, injunctive relief or
20  punitive damages alleged in the Complaint or First Amended Complaint; as well as
21  waiting time penalties, interest and other penalties under state law. The Settlement does
22  not require Settlement Class members to release any claims except those that were or
23  could have been asserted based on the facts in the Complaint or the First Amended
24  Complaint. Pursuant to the terms of the Settlement, a minimum of 65% of the NSA will
25  be paid to participating class members. (See *Settlement Agreement* ¶39, 41, 42, attached
26  to the *Declaration of Eric B. Kingsley* as **Exhibit 1**).

27  ///
28  ///

IV.   **ARGUMENT**

     A.    **The Role Of The Court**

     <u>**Federal Rule of Civil Procedure**</u> **23(e) requires judicial approval of any** compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter within the broad discretion of the district court.  <u>See In re Warner Comms. Sec.</u> <u>Litig.</u>, 798 F. 2d. 35, 37 (2d Cir. 1986); <u>In re Michael Milken & Assoc. Sec. Litig.</u>, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).   If the parties request approval of a class action settlement, a court generally cannot require the parties to modify or otherwise alter the terms of the proposed settlement.  <u>Hanlon v. Chrysler Corp.</u> 150 F3d 1011, 1026 (9th Cir. 1998) ("[t]he settlement must stand or fall in its entirety.").

     "Preliminary approval of a proposed  settlement is the first in a two-step process required before a class action may be settled."  <u>In re NASDAQ Market-Makers Antitrust</u> <u>Litig.</u>, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("<u>In Re NASDAQ</u>").   "First, the court reviewed the proposed terms of settlement and makes a preliminary determination of the fairness, reasonableness and adequacy of the settlement terms." <u>In re Initial Pub. Offering</u> <u>Sec. Litig.</u>, 226 F.R.D. 186, 191 (S.D.N.Y. 2005), citing <u>Manual for Complex Litigation</u>, Fourth §21.632 (2004)).  "Where the proposed settlement appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." <u>In re</u> <u>NASDAQ</u>, 176 F.R.D. at 102.

     "If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement, and the date of the final fairness hearing."  <u>In re Initial Pub. Offering</u>, 226 F.R.D. at 19; cf. <u>Torri v.</u> <u>Tuscon Elec Power Co.</u>, 8 F3d 1370, 1377 (9th Cir 1993) (noting and implicitly approving the district court's use of a preliminary approval process).  Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable, and adequate. <u>Id</u>. (citing <u>Manual</u>

8

1   for Complex Litigation, Fourth §§21.632-21.635 (2004)).

2       As noted by the Second Circuit in In re Traffic Executive Association-E. Railroads,

3   627 F2d 631, 634 (2d Cir 1980), approving dissemination of notice "is at most a

4   determination that there is what might be termed 'probable cause' to submit the proposal

5   to class members and hold a full scale hearing as to its fairness."

6       Here, all of the pertinent factors weigh heavily in favor of granting preliminary

7   approval and authorizing distribution of the Notice.   First, and most importantly, the

8   proposed Settlement was the product of arms-length bargaining.  Plaintiff and the putative

9   class were represented by experienced counsel.

10      Second, no segments of the class are receiving unduly preferential treatment.  All

11  Class Members are subject to clearly defined notice and claim procedures, and release

12  terms.  Third, there is no evidence to collusion between the Defendant and counsel for

13  Plaintiff to reach a settlement that is unfair to the putative class.  Defendant has agreed

14  to not oppose an attorneys' fees request of up to twenty-five percent (25%) of the

15  maximum total payment under the Settlement Amount, which  amount is within the

16  normal range in the Ninth Circuit. Paul, Johnson, Alston & Hunt v. Graulty, 886 F2d 268

17  (9th Cir. 1989)[5].  Such agreements not to oppose an attorney's fees request of up to a

18  certain amount are proper. (Malchman v. Davis, 761 F 2d 893, 905 n.5 (2d Cir. 1985)[6],

19  abrogated on other grounds, Amchem Prods., Inc. V. Windsor 521 U.S. 591, 618-20

20  (1997).

21      Fourth, the proposed Notice and proposed form of distribution is more than

22  adequate.  Rule 23 requires that the absent Class Members receive the "best notice

23  practicable under the circumstances." Federal Rules of Civil Procedure 23(c)(2)(B). The

24

25      [5]The court stated "[o]rdinarily, however, such fee awards range from 20 percent to 30 percent of the fund created. We note with approval that one court has concluded that the "bench mark" percentage for the fee award should be 25 percent." Citing Mashburn v. National Healthcare, Inc., 684 F. Supp. 679, 692 (M.D.Ala.1988).

26

27      [6]Footnote 5 states in pertinent part: "But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement."

28

9

method and the content of the notice to class members should be designed to fairly apprise them of the terms of the proposed settlement and the options available to them. <u>Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 364, 378 (E.D. Pa. 1970).   Along these lines, federal courts have made clear that individual mailings to each class member's last known address is a sufficient form of notice. <u>White v. National Football League</u>, 41 F.3d 402, 408 (8th Cir. 1994), abrogated on other grounds.   <u>Amchem Prods., Inc. v. Windsor</u> 521 U.S. 591, 618-20 (1997).   See *Declaration of Eric B. Kingsley*, ¶18.

Here, the Settlement Administrator shall send the Class Notice[7] and a Claim Form[8] to each Class Member. It shall be conclusively presumed that each and every Class Member whose Class Notice and form is not returned to the Settlement Administrator as undeliverable within fifteen (15) calendar days after mailing actually received the Class Notice and appropriate form.   The Settlement Administrator shall re-mail any Class Notice and appropriate form returned by the Post Office with a forwarding address. It shall be conclusively presumed that those Class Members whose re-mailed Class Notice and form is not returned to the Settlement Administrator as undeliverable within fifteen (15) calendar days after re-mailing, actually received the Class Notice and appropriate form.   The Settlement Administrator will use the appropriate skip tracing and National Change of Address searches in an effort to ensure delivery of the Class Notice and appropriate form to each Class Member.   The Notice will provide the details of the Action and the Settlement and the specific options available to Class Members. See *Declaration of Eric B. Kingsley*, ¶19.

## B.   Certification of Plaintiff's Claims on a Classwide Basis is Appropriate under Rule 23

In granting preliminary approval of a settlement, the Court should determine that

---

[7]See *Notice of Class Action Settlement*,   attached to the *Declaration of Eric B. Kingsley* as **Exhibit 2**).

[8]See *Class Action Claim Form*,   attached to the *Declaration of Eric B. Kingsley* as **Exhibit 3**).

the proposed Settlement Class is a proper class for settlement purposes. See Manual for Complex Litigation, Fourth §21.632; Amchen Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997). The Court can certify a class where plaintiff demonstrates that the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a) - numerosity, commonality, typicality, and adequacy of representation - and one of the three requirements of Rule 23(b)(3) - predominance of common issues and superiority of the class action devise. Federal Rules of Civil Procedure 23; In re Visa Check/Mastermoney Antitrust Litig., 280 F. 3d 124, 132-33 (2d Cir. 2001).

Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Federal Rules of Civil Procedure 23.

In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems. Id. at 620; Federal Rules of Civil Procedure 23(b)(3)(D). Rather, the Court has great discretion in determining whether to certify a class. Amchem, 581 U.S. at 624.

### 1.   Plaintiff Has Met All Of The Prerequisites Under Rule 23(a)

Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a).

### a.   The Class is Ascertainable

Class Members are ascertainable when they may be readily identified without unreasonable expense or time by reference to official records. Rose v. City of Hayward, 126 Cal.App.3d 926, 932 (1981), citing Hypolite v. Carlson, 52 Cal.App.3d 566, 579 (1975). The parties jointly request the Court to make appropriate findings and to certify the following class for purposes of settlement only ("Settlement Class"):

> All employees of Defendant LensCrafters, Inc. who were employed in California from March 1, 2006, until the August 1, 2009, and who were classified as Retail Managers or General

11

Managers at any time during the Class Period.

This class is ascertainable because the Class Members may be readily identified by reference to defendant's employment and payroll records. *Decl. of Nancy Pritikin, ¶9.*

### b. The Class is Numerous

The Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable. Rules of Civil Procedure 23(a)(1). Here, the Settlement Class is clearly large enough to make joinder impracticable, as the Settlement Class has approximately 271 members. See *Declaration of Nancy Pritikin, ¶3.* Plaintiff need not, however, show that the number is so large that it would be impossible to joint every class member. Harris v. Palm Springs Alpine Estates, Inc. 329 F.2d 909, 913-914 (9th Cir. 1964). As such, there is a sufficient number of Class Members to warrant certifying this as a class action for settlement purposes.

In addition to the number of claims being significant, a multiplicity of legal actions dealing with identical basic issues will be required in order to permit recovery by each of the employees if a settlement class is not allowed here. The result would be multiple burdens upon the plaintiff, the defendant and the Court. Moreover, absent a class suit, recovery by any of the individual employees is less likely because the damages to each are relatively small. As such, separate actions would be economically inefficient. In such a case, maintenance of a class action is appropriate. See Daar v. Yellow Cab Company, 67 Cal.2d 695 (1967).

### c. The Settlement Class Satisfies the Commonality Element

Under Federal Rule of Civil Procedure 23(a)(2), Plaintiff must show that there is a question of law or fact common to the Settlement Class. The requirements of Rule 23(a)(2) are easily met. Hanlon v. Chrysler Corp., 150 F. 3d 1011, 1019-20 (9th Cir. 1998) (emphasizing the "minimal" requirements and "permissive" interpretation of Rule 23(a)(2)); Baby Neal for and by Kanter v. Casey, 43 F. 3d 48, 56 (3d Cir. 1994); Slaven v. BP Am., Inc., 190 F.R.D. 649, 655 (C.D. Cal. 2000) (stating that most courts have

1  construed requirements "quite liberally"). As such, plaintiff may satisfy the commonality

2  requirement by demonstrating either a common legal issue with divergent factual

3  predicates or a common nucleus of facts with divergent legal remedies. See Hanlon, 150

4  F.3d at 1019; Staton, 327 F.3d at 953. Furthermore, the presence of merely one common

5  issue of law or fact is sufficient. See Haley v. Medtronic, Inc., 169 F.R.D. 643, 648 (C.D.

6  Cal. 1996); Slaven, 190 F.R.D. at 655.

7        The questions of law and fact common to the members of the Settlement Class

8  include: whether Retail and General Managers were subject to common policies and

9  training; whether Retail and General Managers were properly classified as exempt from

10 the overtime requirements of state law; whether Retail and General Managers were

11 provided appropriate meal breaks or were compensated for missed meal breaks; whether

12 pay records accurately recorded and provided to Retail and General Managers all time

13 worked; and whether Retail and General Managers are entitled to penalties for unpaid

14 wages at resignation/termination. For settlement purposes only, these common issues

15 satisfy Rule 23(a)(2)'s requirements. See, e.g., Hanlon, 150 F. 3d at 1019 (shared legal

16 issues with divergent factual predicates sufficient for class certification); Tierno v.

17 Rite-Aid Corp., No. 05-2520, 2006 WL 2535056 (N.D. Cal., Aug. 31, 2006) (certifying

18 a class of retail store managers); Gutierrez v. Kovacevich "5" Farms, 2004 WL 3745224,

19 at *5 (E.D. Cal. Dec. 2, 2004) (finding commonality satisfied where plaintiffs presented

20 common questions of whether defendants failed to pay plaintiffs for all time worked).

21        **d.     Plaintiff's Claims are Typical of the Class Members' Claims**

22        The permissive standard of typicality focuses on similarity between the legal

23 theories of the proposed class representatives and the legal theories of the class whom

24 they seek to represent. See Hanlon, 150 F. 3d at 1020; Staton v. Boeing Co., 327 F. 3d

25 938, 957 (9th Cir. Wash. 2003). The claims of the Plaintiff in this case, for purposes of

26 settlement, are stipulated to be typical of the claims of the members of the Settlement

27 Class. Specifically, the claims of the Settlement Class are based on the same legal and

28 factual claims of the Plaintiff, i.e., that if the Settlement Class members were misclassified

as exempt, they would be entitled to any overtime worked; they would be entitled to meal and rest breaks; they would be entitled to premium wages for any missed meal or rest breaks; and that LensCrafters would have been obligated to keep records of such breaks.

### e. Plaintiff and Her Counsel Satisfy the Adequacy Element

Federal Rule of Civil Procedure 23(g) requires that courts consider the following four factors when appointing class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. See Morelock Enterprises, Inc. v. Weyerhaeuser Co., 2004 WL 2997526, *5 (D. Or. Dec. 16, 2004).

Plaintiff and Class Counsel have fairly and adequately represented the interests of the Settlement Class Members. The adequacy requirement is met by fulfilling two conditions. First, the plaintiffs must be represented by counsel qualified to conduct the litigation. Second, the plaintiffs' interest in the litigation must not be antagonistic to the class; in other words, he or she must have no disabling conflict of interest that might hinder the prosecution of the action on behalf of the class. McGhee v. Bank of America, 60 Cal.App.3d 442, 451 (1976).

Plaintiff has retained counsel qualified to conduct prosecution of the class case. Plaintiff counsel is experienced in prosecuting wage and hour class actions. Further, absent a showing to the contrary, adequacy may be assumed. Guarantee Ins. Agency Co. v. Mid-Continental Rty. Co., 57 R.R.D. 555, 565-66 (N.D. Illinois 1972). Plaintiff Counsel's firm is experienced in prosecuting and defending employment litigation, and we have focused a substantial percentage of our practice since 2000 on wage, hour and working condition violations. Plaintiff Counsel's firm is well versed in class action litigation and have diligently and aggressively pursued this action. Plaintiff Counsel's firm is currently the class counsel for numerous pending class action lawsuits in Northern, Central, and Southern California. See Declaration of Eric B. Kingsley, ¶16.

Secondly, the Named Plaintiff's interest in the litigation is co-extensive with the

1   interests of the Class. Plaintiff and each member of the proposed class have a strong and

2   identical interest in establishing liability on the part of Defendant. The Class Members

3   all worked for defendant during the Claims Periods and incurred the same type of alleged

4   damages with respect to unpaid wages. Plaintiff further agreed to serve as class

5   representative and retained experienced counsel. This demonstrates her commitment to

6   bringing about the best possible results for the benefit of the class. Finally, there is no

7   evidence indicating that plaintiff's interests would be antagonistic to those of the class.

8   **C.   The Proposed Settlement Class Should Be Certified Because It Also**

9   **Meets The Requirements of Rule 23(b)(3).**

10   In addition to the Rule 23(a) requirements, a district court must also find that

11   common issues of law or fact "predominate over any questions affecting only individual

12   members." Federal Rule of Civil Procedure 23(b)(3). For purposes of settlement only,

13   LensCrafters has indicated that it is willing to stipulate that, based on Plaintiff's

14   allegations, liability could be determined on a class-wide basis. See *Declaration of Eric*

15   *B. Kingsley, ¶5,* and *Declaration of Nancy Pritikin, ¶9.*

16   The proposed Settlement Class in this case is sufficiently cohesive to warrant

17   adjudication by representation, at least for purposes of settlement. See Hanlon, 150 F. 3d

18   at 1022. Plaintiff and the proposed Settlement Class members seek unpaid wages and

19   related damages and penalties for work performed as Retail and General Managers.

20   Based on Plaintiff's allegations that General Managers and Retail Managers at

21   LensCrafters have roughly the same duties throughout California, liability could be

22   determined on a class-wide basis, and would therefore not be dependent on individual

23   assessments of liability. Furthermore, because the "predominance" factor concerns

24   liability, any variation in damages is plainly insufficient to defeat class certification.

25   Blackie v. Barrack, 524 F. 2d 891, 905-06 (9th Cir. 1975). Thus, the proposed Settlement

26   Class may be certified for settlement purposes.

27   Likewise, based on Plaintiff's allegations, the class action device proposed here

28   would be "superior to other available methods for the fair and efficient adjudication of the

1    controversy." <u>Federal Rules of Civil Procedure</u> 23(b)(3). This Action allows all of the

2    Settlement Class members' claims to be fairly, adequately, and efficiently resolved to a

3    degree that no other mechanism or forum would provide. As in <u>Hanlon</u>, the alternative

4    methods of resolution are individual claims for a relatively small amount of damages. See

5    150 F. 3d at 1023. These claims "would prove uneconomic for potential plaintiffs"

6    because "litigation costs would dwarf potential recovery." <u>Id</u>. For this reason, a class

7    action is the superior method of resolution.

8         Finally, there are no issues of manageability under the Settlement that would

9    preclude certification of a Settlement Class. In this respect, a court faced with a request

10   for a settlement only class like this one need not inquire whether the case would present

11   intractable problems of trial management, but other requirements under Rule 23 must still

12   be satisfied. See, e.g., <u>Amchem Products v. Windsor</u>, 521 U.S. 591, 620 (1997). In any

13   event, as discussed below, the proposed plan of distribution and settlement process is

14   efficient and manageable.

15   **V.   THE   PROPOSED   SETTLEMENT   SHOULD   BE   GRANTED**

16   **PRELIMINARY APPROVAL**

17        The law favors settlement, particularly in class actions and other complex cases

18   where substantial resources can be conserved by avoiding the time, cost, and rigors of

19   formal litigation. See, e.g., <u>Van Bronkhorst v. Safeco Corp.</u>, 529 F. 2d 943, 950 (9th Cir.

20   1976). These concerns apply with particular force in a case such as this, where Plaintiff

21   has alleged that approximately 271 employees were misclassified and, consequently, not

22   paid overtime or received meal and rest breaks. To grant preliminary approval of this

23   class action settlement, the Court need find only that the settlement is non-collusive, i.e.

24   procedurally fair, and within the range of possible final approval, also described as "the

25   range of possible judicial approval," i.e. substantively fair. <u>In re Vitamins Antitrust Litig.</u>,

26   WL 856292, at *4-5 (D.D.C. July 25, 2001); see also <u>4 Newberg</u> §11.41. The proposed

27   Settlement satisfies both of these elements.

28   ///

A.   **The Terms Of The Proposed Settlement Are Procedurally Fair Because The Case Was Settled as a Result Of Non-Collusive Negotiations.**

1.   **The Settlement Is The Product Of Serious, Arms-Length, Informed Efforts By Both Parties.**

As long as "preliminary evaluation of the proposed Settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the court should preliminarily approve the Settlement. In re Vitamins, 2001 WL 856292, at *4-5 (quoting Manual for Complex Litigation, Third (FJC 1995)).   In this respect, the Settlement resulted only after both sides engaged in discovery and then engaged in arms-length settlement negotiations that were conducted under the supervision of experienced mediator Mark Rudy.   The negotiations were protracted, with the settlement discussions continued after the mediation concluded. Id.   In sum, the proposed Settlement is the non-collusive product of hard-fought litigation. See *Declaration of Eric B. Kingsley, ¶8*, and *Declaration of Nancy Pritikin*, ¶12, 13.

2.   **The Payment to the Named Representative For Her Service to the Class Is Reasonable and Routinely Awarded.**

The payment of $1,000 to the Plaintiff is intended to recognize the time and effort she expended on behalf of the Class.   Indeed, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001), quoting In Re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).   In this case, the Class Representative performed important services for the benefit of the class:   she provided information regarding the structure of the company and her job duties during lengthy interviews; she produced relevant documents; she submitted to a one-day deposition by LensCrafters' counsel; and she worked with Plaintiff counsel throughout the case. See *Declaration of Eric B.*

17

*Kingsley*, ¶15.   Accordingly, the modest payment to the Plaintiff is appropriate and justified as part of the overall Settlement.   See *Declaration of Nancy Pritikin*, ¶15.

> 3.   **The Proposed Plan of Distribution Is Fair and Reasonable Because it Accounts for Settlement Class Members' Lengths of Service.**

Each class member who submits a claim for payment will receive a share of the Settlement Amount which is tied to the class members' workweeks worked. The proposed plan of distribution is fair and reasonable because it takes into account the factors that would affect the amounts class members would recover if this litigation were successfully concluded through judgment, including the amount of time they worked. Because of the similarity in salary amount of Settlement Class members, those who submit claims will be paid based on the same workweek rate. Accordingly, this plan of distribution based on Settlement Class member claims is fair, objective and will reasonably approximate the relative damages suffered by Class members. See *Declaration of Eric B. Kingsley*, ¶13.

> **B.   The Settlement is Fair and is Within the Range of Possible Final Approval**

In approving a class action settlement, courts make a "preliminary evaluation of the fairness of the settlement, prior to notice.   In re NASDAQ, 176 F.R.D. at 102.   The purpose of the preliminary approval inquiry is "to determine whether the proposed settlement is within the range of possible approval."   Armstrong v. Board of School Directors of the City of Milwaukee, 616 F. 2d 305, 314 (7th Cir. 1980).

At the preliminary approval stage, the district court is not required to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, the decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.   See 3 M.J. Moore, Moore's Federal Digest ¶23-279 (2d ed. 1993); In re Prudential, 163 F.R.D. at 210 (noting that the court can fully evaluate the fairness of the settlement "at the fairness

18

1  hearing, when it can consider the submissions by proponents and potential opponents of

2  the settlement and reaction of the Class Member"). Preliminary approval is merely the

3  prerequisite to giving notice so that "Proposed settlement... may be submitted to members

4  of the prospective class for their acceptance or rejection." Philadelphia Housing

5  Authority v. American Radiator & Standard Sanitary Corp., 323 F. Supp. 364, 372 (E.D.

6  Pa 1970). See also In re Initial Public Offering, 226 F.R.D. at 191 (fairness hearing

7  affords class members "an opportunity to present their views of the proposed

8  settlement.").

9      "It is well established that there is an overriding public interest in settling and

10  quieting litigation, and that this is particularly true in class actions." In re Prudential, 163

11  F.R.D. at 209. See also Wal-Mart Stores, Inc. V. Visa U.S.A. Inc., 396 F. 3d 96, 117 (2d.

12  Cir. 2005) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions §11.41,

13  at 87 (4th ed. 2002)). "We recognize that since 'the very purpose of a compromise is to

14  avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the

15  courts must not turn the settlement hearing 'into a trial or a rehearsal of the trial'; and that

16  the court is concerned with the likelihood of success or failure and ought, therefore, to

17  avoid any actual determination of the merits." Saylor v. Lindsley, 456 F.2d 896, 904 (2d

18  Cir. 1972) (quoting Haudek, The Settlement and Dismissal of Stockholders' Actions -

19  Part II: The Settlement, 23 sw L.J. 765, 795 (1969)(footnotes omitted)). "In determining

20  whether a proposed settlement is fair, reasonable, and adequate, the primary concern is

21  with the substantive terms of the settlement: Basic to this... is the need to compare the

22  terms of the compromise with the likely rewards of litigation." Maywalt v. Parker &

23  Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d 1995) internal quotations omitted).

24      The Ninth Circuit has identified eight factors that courts may consider in deciding

25  whether to approve a proposed settlement of a class action:[9]

26

27      [9]The Ninth Circuit has stressed that the above list is neither and exhaustive list of the relevant considerations, nor
the most significant factors, stating, "the relative degree of importance to be attached to any particular factor will depend

28  upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and
circumstances presented by each individual case. Officers For Justice, 688 F3d. at 625.

(1) the amount offered in settlement; (2) the reaction of the class members to the proposed settlement; (3) the strength of plaintiff's case; (4) the risk, expense complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the state of the proceeding; (6) the experience and views of counsel; (7) the risk of maintaining class action status throughout the trial; and the absence of collusion.  See <u>Officers for Justice</u>, 688 F.2d at 625; see also <u>Mego Financial Corp. Sec. Litigation</u>, 213 F.3d, 454, 458 (9th Cir. 2000).

### 1.    The Amount Offered in the Settlement Supports Approval

Defendants have agreed to pay $400,000 to settle this action.  Plaintiff confirmed in deposition that she and approximately sixty percent (60%) of the Settlement Class are part of the settlement in the <u>Babasa</u> action that could preclude them from recovering anything in this Action.

As previously discussed, in the <u>Babasa</u> settlement, LensCrafters was released from "any and all claims...arising from...(1) the Lawsuit and any Claims arising out of or reasonably related to the facts of the Lawsuit...and (2) any wage and hour violations... that could be asserted...up to April 17, 2008." The <u>Babasa</u> action and the present Action concern claims for overtime and meal and rest breaks, so defendant filed a motion for summary judgment arguing that Plaintiff waived her right to recover in the present action against LensCrafters.  If LensCrafters were to prevail in its motion, there would be no Plaintiff for this lawsuit.  In addition, the same principles that would result in dismissal of Plaintiff could be extended to the sixty percent of the Settlement Class who were covered by the terms of the settlement in the <u>Babasa</u> action.  Both Parties have considered this important fact in their decision to settle this case.  See *Declaration of Eric B. Kingsley, ¶10,* and *Declaration of Nancy Pritikin, ¶9.*

### 2.    The Expected Reaction of the Class Supports Approval of the Settlement

Plaintiff's counsel anticipates a positive reaction from the Settlement Class, given the circumstances surrounding this settlement.  Indeed, the Named Plaintiff has readily agreed to this Settlement.  With respect to the absent Class Members, Plaintiff's Counsel can best address this issue at the Final Fairness Hearing, after these individuals have had

1   an opportunity to review and comment on the proposed Settlement.

2   **3.   Defendant Had Strong Defenses**

3   Defendant also presented evidence in support of its defense that the General

4   Managers and Store Managers were properly classified as non-exempt.  Among other

5   evidence, Defendant provided Plaintiff with the General Manager and Store Manager job

6   descriptions, which provided that each was responsible for Customer Satisfaction,

7   Coaching and Development of Employees, Maintaining Store Standards of Performance,

8   Recruiting Staff and Forecasting Weekly Staffing Needs, Administrative Processing and

9   Store Appearance/Maintenance.  In addition, the General Manager is also responsible for

10   supervising the Laboratory and Retail Managers, loss prevention and inventory,

11   regulatory compliance and safety, and maximizing the Store's optometric partnership.

12   Neither the General Manager's job description nor the Retail Manager's job description

13   contains any selling requirement.  Moreover, Plaintiff testified that she spent most of her

14   working time supervising a staff of 13-16 sales associates.  Plaintiff acknowledged in her

15   deposition that she was responsible for creating sales associate schedules, hiring,

16   supervising and disciplining sales associates, for handling their problems, and for

17   ensuring that they received their meal and rest breaks.  Defendant argued that Plaintiff's

18   own resume prepared after she left LensCrafters confirmed that at LensCrafters, she was

19   "[r]esponsible for all aspects of store and Dr. patient relations.  Insured according with

20   HIPPA privacy standards and laws.  Schedule and manage payroll for a staff of 17-30

21   individuals.  Recruit, train and build top performing sales teams.  Mentor, coach, and

22   create developmental programs to insure highest levels of customer service and

23   satisfaction. . . ."  Defendant believes it had strong defenses to the merits of Plaintiff's

24   claims.  See *Declaration of Nancy Pritikin*, ¶11.

25   **4.   The Risk, Expense, Complexity and Likely Duration of This**

26   **Litigation Supports the Settlement**

27   **a.   The Risks Inherent in Continued Litigation are Great**

28   To assess the fairness, adequacy and reasonableness of a class action settlement,

21

1    the Court must weigh the immediacy and certainty of settlement proceeds against the risks

2    inherent in continued litigation. See In re General Motors Corp., 55 F.3d 768, 806 (3d Cir.

3    1995) ("[T]he present value of the damages plaintiffs would likely recover if successful,

4    appropriately discounted for the risk of not prevailing, should be compared with the

5    amount of the proposed settlement.") (internal quotation marks and citation omitted);

6    Boyd v. Bechtel Corp., 485 F. Supp. 610, 616-17 (N.D. 23 Cal. 1979).

7        This factor supports preliminary approval here. The Settlement affords the Class

8    prompt and substantial relief, while avoiding significant legal and factual hurdles that

9    otherwise may have prevented the Class from obtaining any recovery at all. While Class

10   Counsel believe that Plaintiff's claims are meritorious, they are experienced and

11   understand that the outcome of a motion for summary judgment, class certification, trial

12   and any attendant appeals, are inherently uncertain.

13           **b.    The Complexity, Expense and Likely Duration of the**

14                   **Litigation Weigh in Favor of Settlement.**

15       Another factor considered in approving a settlement is the complexity, expense,

16   and likely duration of the litigation. Officers for Justice, 688 F.2d at 625; Girsh, 521 F.2d

17   at 157. The Court must weigh the benefits of the Settlement against the expense and delay

18   involved in achieving an equivalent or more favorable result at trial. e.g., Young v. Katz,

19   447 F.2d 431,433-34 (5th Cir. 1971).

20       The policy that favors settlements of class actions and other complex cases applies

21   with particular force here. Employment cases, and specifically wage and hour cases, are

22   expensive and time-consuming. That this is a class action further amplifies the economies

23   of time, effort and expense achieved by this Settlement invariably adding time and

24   expense to the litigation process via the certification process alone. The Settlement, on

25   the other hand, provides to all Class Members substantial relief promptly and efficiently.

26   Were the Court to deny approval of the settlement, most Class Members would be left

27   without a remedy as the economics of litigation of individual claims makes it unlikely that

28   many class members would undertake such expensive and time consuming litigation. The

22

1  Settlement in this case is therefore consistent with the "overriding public interest in

2  settling and quieting litigation" that is "particularly true in class action suits." See Van

3  Bronkhorst 529 F.2d at 950 (footnote omitted); see also 4 Newberg on Class Actions §

4  11.41 (citing cases). See *Decl. of Eric B. Kingsley,* *¶14.*

5       **5.    The Stage of the Proceedings and Scope of Discovery Support the**

6              **Settlement**

7              As noted above, Plaintiff's counsel has investigated the claims asserted

8  against LensCrafters by propounding document requests, special interrogatories, and

9  taking and defending depositions.  Counsel also completed its own investigation and

10 informal discovery. More importantly, LensCrafters has produced, and Plaintiff's counsel

11 has reviewed, data on putative class members, including salary, position worked, and

12 dates of hire and termination prior to entering into settlement negotiations.  See

13 *Declaration of Eric B. Kingsley,* *¶8.*  Accordingly, Plaintiff's counsel was able to

14 negotiate the proposed Settlement with ample knowledge as to the strengths and

15 weaknesses of this case and the amounts necessary to compensate Class members for their

16 alleged damages.

17      **6.    The Experience and Views of Counsel Support Settlement**

18            **Approval**

19            Counsel for all Parties are experienced in wage-and-hour class-action litigation, and

20 both have represented their client's best interests in reaching the Settlement. "Great

21 weight is accorded the recommendation of counsel, who are most closely acquainted with

22 the facts of the underlying litigation. This is because 'parties represented by competent

23 counsel are better positioned than courts to produce a settlement that fairly reflects each

24 party's expected outcome in the litigation.' Thus, '"the trial judge, absent fraud, collusion,

25 or the like, should be hesitant to substitute own judgment for that of counsel.' " Nat 'l

26 Rural Teleoms Coop., 221 F.R.D. at 528 12 (citations omitted); see also In re First Capital

27 Holdings Corp. Fin. Prods. Sec. Litig., MDL Docket No. 901, Ib992 U.S. Dist. LEXIS

28 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement

1   represented most beneficial result for class compelling factor in approving settlement).

2       Indeed, courts across the country give substantial weight to the experience of the

3   attorneys who prosecuted the case and negotiated the settlement in determining whether

4   a proposed settlement is appropriate. See Reed, 793 F.2d at 175; In re Automotive

5   Refinishing Paint Antitrust Litig., MDL No. 1426, 2003 U.S. Dist. LEXIS 4681, at *3

6   (E.D. Pa. Mar. 17, 2003) (granting preliminary settlement approval) ("[I]t is appropriate

7   to give deference to the recommendations of experienced attorneys who have engaged in

8   arms-length settlement negotiations."); McNamara v. Bre-X Minerals Ltd., 214 F.R.D.

9   424, 430-31 (E.D. Tex. 2002) ("Counsel on all sides have proved to the Court their

10  knowledge of the facts and law relevant to this case. Settlement was reached by

11  knowledgeable counsel, and it was arrived at after much negotiation...").

12           a.      **The Absence of Fraud or Collusion Supports the Approval**

13                   **of the Settlement.**

14      Here, the Parties negotiated the proposed Settlement in good faith, following

15  formal and informal discovery.  The exchange of data allowed Plaintiff's Counsel fully

16  to assess the strengths and weaknesses of the class claims against Defendants and the

17  benefits of the proposed Settlement. The dialogue at the mediation, albeit respectful, was

18  adversarial between the Parties regarding their different views of the laws and issues

19  before them. The proposed Settlement between the Parties resulted only after arms-length

20  settlement negotiations under the supervision of Mark Rudy, an experienced mediator.

21           b.      **Risk of Maintaining the Action Through Trial**

22      As noted above, there were certain risks that the Plaintiff would have faced had this

23  case proceeded to trial. First and foremost, Defendants would have invariably contested

24  certification of any proposed class.  That assumes that Plaintiff is able to get past the

25  motion for summary judgment wherein Defendant would argue that Plaintiff (and sixty

26  percent (60%) of the class) signed a release that is a complete bar to her recovery in this

27  case.  If Defendants were to win on any of these issues, it would place substantial doubts

28  as to the likelihood of the Class Members  recovering the same or a greater amount

through trial as was obtained with this Settlement. This settlement is in recognition of the risks to the Class Members as to the ultimate outcome of this action. Specifically, it recognizes the fact that Defendant could prevail on its motion for summary judgment, that the class may not be certified, the risk that a determination could be make that Retail Managers and General Managers were not misclassified, and several other defenses including the potential that no private right of action exists for meal periods. Finally, the settlement recognizes the delay and financial repercussions that could have resulted from an appeal, particularly given the numerous unresolved legal issues regarding meal break claims. Consequently, this factor also militates in favor of approving the Settlement. In sum, this settlement is clearly reasonable and thus within the range meriting approval by the Court. The settlement before the Court falls "within the rage of possible approval," and therefore merits preliminary approval by the Court.

## VI.   CONCLUSION

The parties respectfully submit that the proposed settlement is fair, reasonable, and in the best interests of the class. The parties therefore respectfully request this Court to (1) grant preliminary approval of the settlement; (2) approve the proposed form of notice, claim form, and request for exclusion; and (3) schedule a hearing on final approval of the settlement Plaintiff's counsel's motion for an award of attorneys' fees and litigation costs, at which Class Members may be heard.

DATED: September 3, 2009

KINGSLEY & KINGSLEY, APC

By: _____
ERIC B. KINGSLEY
Attorney for Plaintiffs